UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JORGE SALCEDO, )<br>)<br>Defendant )<br>) | Criminal No. 19-10081-IT<br><br>**REDACTED**<br>**(Leave to file granted March 12, 2021)** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Jorge Salcedo.

Salcedo conspired with William "Rick" Singer, Ali Khosroshahin, and others to recruit students to the University of California, Los Angeles ("UCLA") soccer teams in exchange for bribes. He recruited other coaches to join the scheme, created fake backstories about the students, and instructed one parent on how to defraud the university. Over the course of the scheme, he personally profited by accepting at least $200,000 in bribe payments. For his actions, the government respectfully recommends that Salcedo be sentenced to a term of 18 months in prison, one year of supervised release, and a fine of $95,000, and that he be ordered to forfeit $200,000 in criminal proceeds.

### I.      Overview of the Offense Conduct

#### A.      Charged Conduct

In or about May 2016, Khosroshahin, the former head women's soccer coach at the University of Southern California ("USC"), approached Salcedo about participating in a scheme

to recruit students to UCLA as purported athletes in exchange for bribe payments funneled through Singer. ███████████████, Salcedo "did not need a lot of convincing." PSR ¶ 45.

Shortly thereafter, Salcedo caused Applicant 1 to be designated as a recruit to the UCLA women's soccer team, thereby facilitating her admission to the university, despite the fact that he knew she was not a recruitable soccer player. (Indeed, Khosroshahin texted Salcedo, "[D]oes the woman's [sic] coach know she is not going to play?" PSR ¶ 46.) Because Salcedo was the men's coach, and therefore not responsible for recruiting players to the women's team, he involved the women's soccer coaches in his fraud by convincing them to recruit her. When UCLA compliance staff asked whether Applicant 1 had a soccer background given that she listed track in her NCAA account but not soccer and she had no presence on the Internet as a soccer player, Salcedo created a fake backstory for the women's assistant coach to use to explain the recruitment. Likewise, when the recruitment was jeopardized because of Applicant 1's medical history, Salcedo instructed her mother and the women's coaches to downplay the medical condition to compliance staff, and drafted or edited emails for them to send to compliance officials, falsely assuring them that Applicant 1 intended to play. Salcedo received $100,000 from Singer in exchange for his efforts.

In 2017, Salcedo attempted to facilitate the admission of Applicant 2 to UCLA by recruiting him to the men's soccer team in exchange for an anticipated bribe, despite the fact that Applicant 2 did not play competitive soccer. (Indeed, Singer told Salcedo that "if [UCLA compliance] look him up under [his high school] they will not find him." PSR ¶ 74.) After Salcedo instructed an assistant coach to complete paperwork to award a partial scholarship to Applicant 2, UCLA compliance staff inquired about why they could not find anything concerning his athletic background on the Internet, why he was being recruited so late in the process, and why he was not yet registered with the NCAA. The compliance officer also noted that Applicant 2 had been denied

regular admission to UCLA. Salcedo forwarded the compliance officer's email to Singer and Khosroshahin with the comment that his recruitment "didn't get off to a good start." PSR ¶ 71. While Salcedo pushed forward by asking Singer and Khosroshahin for materials he could show the compliance officer as evidence of Applicant 2's soccer background, the student ultimately enrolled at a different school.

In 2018, Salcedo recruited Applicant 3 to the UCLA men's soccer team, thereby facilitating his admission to the university, in exchange for a bribe. As with Applicant 2, Salcedo submitted paperwork awarding Applicant 3 a 25 percent scholarship based on his understanding that the compliance department applied less scrutiny to scholarship recruits. In that paperwork, Salcedo falsely stated that he saw Applicant 3 play in Canada. Salcedo received another $100,000 bribe from Singer in exchange for the bogus recruitment.

In November 2018 and January 2019, during consensually recorded calls with Singer, Salcedo indicated that he was willing to recruit additional students in exchange for bribes, and asked Singer for an advance on the next bribe payment.

B. Additional Fraud

Beyond the charged conspiracy, Salcedo engaged in separate schemes to defraud USC and the Internal Revenue Service ("IRS").

In 2016—in a scheme unrelated to Singer—Salcedo agreed with Khosroshahin and others that Khosroshahin would use his contacts at USC to cause a student to be recruited to the USC baseball team, thereby facilitating his admission to the university, in exchange for payments funneled through Salcedo. The applicant had been denied admission through the regular application process, in which he had indicated he did not intend to play baseball in college. The applicant's father wired $100,000 to an account Salcedo controlled in the name of his sports

marketing company, Princeville Enterprises. Days later, Khosroshahin confirmed to Salcedo in a text message that he told Donna Heinel, the USC Senior Women's Administrator "50 after admissions is official and 50 next year." PSR ¶ 103. Salcedo later told Khosroshahin to tell Heinel that "the money will be sent/wired to wherever she wants at the end of the month." PSR ¶ 104. Thereafter, Salcedo wrote a check for $50,000 from the Princeville Enterprises account to the USC Women's Athletic Board, an account at USC that Heinel oversaw. The applicant was subsequently admitted to USC as a purported baseball recruit. The following year, Heinel reached out to Khosroshahin, who in turn contacted Salcedo, about the second $50,000 payment. In reply, Salcedo asked Khosroshahin to tell Heinel that "the check will be there soon." PSR ¶ 106.

Salcedo also inflated the purported business losses of his company, Princeville Enterprises, in an effort to reduce his income taxes. In 2016, Salcedo's accountant emailed Salcedo that, for tax year 2014, "we used Princeville to generate loss to reduce your income tax. We think Princeville actually made out $29K profit." The accountant continued that, should he be audited, Salcedo would owe $25,000 to $35,000 in additional tax. Salcedo's accountant sent a similar message concerning Salcedo's 2015 taxes, noting that he had "used Princeville to generate a loss of over 100K to reduce your income tax. We think Princeville actually made about $38K profit." The accountant estimated Salcedo would owe an additional $60,000 to $70,000 should he be audited. Despite knowing that his company had actually turned significant profits, Salcedo caused the fraudulent tax returns showing losses in 2014 and 2015 to be filed.

## II.     The Applicable Sentencing Guidelines

As set forth in the plea agreement, the parties have stipulated that Salcedo's total offense level under the Sentencing Guidelines is 21. That calculation reflects a base offense level of 12 under Section 2C1.1(a)(2); a 2-level increase under Section 2C1.1(b)(1) because Salcedo accepted

more than one bribe; a 10-level increase under Sections 2C1.1(b)(2) and 2B1.1(b)(1)(F) because the value of the bribe payments was $200,000; and a 3-level decrease pursuant to Section 3E1.1 for acceptance of responsibility. The resulting Guidelines sentencing range is between 37 and 46 months. Under the terms of the plea agreement, the government has agreed not to seek a sentence greater than 24 months.

### III.     Sentencing Recommendation

The government respectfully submits that the relevant factors under Section 3553(a) support the imposition of a meaningful sentence of incarceration. The government recommends a term of 18 months in prison.

The defendant's criminal conduct involved defrauding a taxpayer-funded public university. At all times, Salcedo's motivation was enriching himself. He took the entirety of the bribe money into his personal accounts, unlike other coaches who also put some of the money toward the university. Moreover, unlike the parents charged in related cases, Salcedo cannot claim to have acted out of love to get his own child into college. As a coach, Salcedo had a duty to his team and his school. He abused his position—and their trust—out of self-interest, and in the process undermined the integrity of the higher education system, which already favors those with money and privilege.

Salcedo was an eager participant, who did not need convincing, and who engaged in the scheme repeatedly, expressed a willingness to do it again, and even requested an advance payment from Singer for future fake recruits. Salcedo also played an active role in the scheme. He coopted the women's coaches into the scheme and directed a parent on how to defraud the university, came up with fake backstories for the applicants, and attempted to use scholarship funds to facilitate Applicants 2 and 3's admission and avoid scrutiny from UCLA compliance—all without

prompting from Singer or Khosroshahin.[1]  And his scheme with Singer was not an isolated event, as his involvement in a separate scheme with Khosroshahin and Heinel to falsely present an applicant as a baseball recruit makes clear, and as his efforts to defraud the IRS of up to $105,000 in taxes confirms.[2]

Considerations of specific and general deterrence also counsel in favor of a meaningful sentence.  As this case makes clear, while it is all too easy for coaches to solicit and accept bribe payments in exchange for recruiting purported athletes, it is difficult for universities, and criminal authorities, to detect and prove such fraud.  Indeed, despite the compliance protocols UCLA had in place, Salcedo was able to cause two fake athletes to be successfully recruited, and was so confident he would be able to recruit more that he asked for an advance on a future bribe payment.[3]

The need to avoid sentencing disparities also supports a meaningful term of incarceration.  The former University of Texas tennis coach Michael Center was sentenced to six months in prison for conspiring with Singer to recruit a student to that university's tennis team in exchange for a bribe.  *See United States v. Center*, No. 19-cr-10116-RGS (D. Mass. Feb. 24, 2020).  Center personally accepted at least $60,000, and directed the rest of the bribe to the university, while

---

[1] While Salcedo has previously indicated that he expected Applicant 3 to renounce the scholarship upon enrollment, the fact remains that the scholarship funds could not be offered to another member of the team given that NCAA rules limit the number of scholarships per sport.

[2] In addition, after he was arrested in this case, Salcedo disregarded this Court's orders by crossing the border into Mexico at a location where he would not need to show his passport, and then failed to report to Probation his contact with law enforcement upon his return to the United States.

[3] Salcedo has also previously suggested that UCLA encouraged the recruitment of students with families who had the ability to financially support the teams.  In fact, however, UCLA compliance officials scrutinized his recruitments for fraud, and Salcedo misled them in response.

Salcedo personally pocketed the entire $200,000 in bribe payments.[4]  Moreover, while Center participated in only one fraudulent recruitment, and rejected a second opportunity Singer presented him, Salcedo arranged two fraudulent recruitments, attempted a third, requested an advance payment for future bogus recruits, and engaged in a similar but separate scheme at USC with respect to yet another applicant.  Center's sentence also reflects his immediate acceptance of responsibility and demonstrated remorse for his actions, as reflected by his decision to plead guilty within weeks of his arrest—before he was even indicted and without having reviewed the government's evidence against him— ███████████████████████████████████

███████████████████████████████.

A second benchmark is the sentence imposed on Xiaoning Sui, the parent of one of the students Salcedo purported to recruit in exchange for a bribe.  *See United States v. Sui*, No. 19-cr-10082-DPW (D. Mass. May 20, 2020).  Sui was sentenced to time served, which reflected the approximately five months she was detained in a Spanish prison awaiting extradition to the United States.  Sui's sentence took account of the fact that she participated in the scheme only once; was not an active participant, but rather followed Singer's and Salcedo's lead (including by accepting the scholarship); was detained for nearly five months in a foreign prison where she did not speak the language and was unable to communicate effectively with guards or fellow inmates; and faced likely immigration consequences as a result of her conviction.  Salcedo's repeated and more extensive involvement in the scheme, his violation of his duty to the university, his willingness to

---

[4] By contrast, John Vandemoer, the former Stanford University sailing coach, did not accept any bribe money personally and was sentenced to one day in prison, deemed served.  *United States v. Vandemoer*, No. 19-cr-10079-RWZ (D. Mass. June 12, 2019).

abuse his position to corrupt the system of higher education, and his other relevant conduct, merit a comparatively more serious sentence than those imposed on Center and Sui.[5]

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Salcedo to a term of imprisonment of 18 months, followed by one year of supervised release, a fine of $95,000, forfeiture of $200,000, and a $100 special assessment.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting U.S. Attorney

By:   */s/ Kristen A. Kearney*
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
Assistant United States Attorneys

Date: March 12, 2021

### Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By:   */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant United States Attorney

---

[5] Salcedo's conduct also merits a significantly longer sentence than the three months imposed on Martin Fox, a go-between in Singer's scheme, who suffers from significant health issues ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. As noted in the government's sentencing memorandum for Fox, absent his health considerations, the government would have sought a sentence of one year and one day, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.